My name is Matt Ball and I represent the petitioner, Mr. Longinos Togonon. I'd like to reserve four minutes of my time for rebuttal, and I'll start by focusing on the aggravated felony issue, although I'm happy to answer any questions about the Convention Against Torture issue as well. Your Honors, this is a complicated case in a couple ways, but it is simple in one critical respect, and that is, whether you adopt our interpretation of the federal statute, Section 844I, or the government's interpretation of that statute, California's Arts and Law, Section 451, remains broader. And the reason that is the case is because California, unlike any other law in the states of this circuit, unlike Arson at Common Law, applies to situations in which a defendant creates a risk of fire, but is subjectively not aware of the risk that he or she is creating. And because that is true, California would prosecute individuals for conduct that they can never be prosecuted under federal law. Yes, Your Honor? Oh, I'm sorry. I thought you were asking a question. To back up a little bit, I think the best way to think about this case is by thinking about the mens rea that we're talking about in three different categories. The first is simply intentional arson, and that I think we and the government agree is covered by the federal statute. The second is what was known as wanton arson under Common Law, and that is conduct in which a defendant's actions create a high risk of arson, but they know that risk to be true, and they disregard that risk. It's basic willful disregard. We don't believe that Section 844I applies to that conduct. The government does, and I'm happy to talk about that. But the third category is this category I just described, which is where a defendant creates this risk that he or she is subjectively unaware of. And we believe, again, that California's statute covers all three of these categories, and Section 844I only covers Category 1. The government believes that the federal statute covers both Categories 1 and 2, but under no reading of that federal statute does it apply to that basic third statute. And as it seems like you're suggesting, if we agree with you on that third category, we don't need to figure out the second category. Is that right? That's correct, Your Honor. Yes. Now, you know, to be clear, we think that we have the better reading of Section 844I based on the context, legislative history, and statutory history of the statute. But that is true. I really think all this court needs to do is to look at the California Supreme Court's opinion in ENRI V.V. and come to the conclusion that it is uniquely broad and broader than the federal statute. So could I ask you about V.V.? So V.V. does seem to adopt more like a negligence standard, but then it also says that the defendants actually had the awareness. It has these other sentences about the defendants actually having the awareness. So do you need to show us some case where that wasn't true to show that there's a realistic probability that someone would be prosecuted really just for the negligence standard and who didn't have the awareness subjectively? Your Honor, we can show that. I don't think we need to. I think ENRI V.V. shows that as well. You know, the holding of ENRI V.V. is very clear. You know, this is on page 1030 of the opinion. The juveniles were not required to know or be subjectively aware that the fire would be the probable consequence of their acts.  But the point was ENRI V.V. was reviewing, ultimately, proceedings in which the prosecution was not required to prove that as an element of the crime. So even if facts existed upon which they might have made that proof, it doesn't matter. That's not what the prosecution is required to prove in California. I would note, though, that we cite a couple cases that have cited V.V. since it was published. These are California Court of Appeal cases, Mason, Dunford, Morales, and Padilla. If you look at Mason and the facts in that case, they're actually even more egregious than the facts in ENRI V.V. This is a case in which an individual who's on vacation with his family throws a firecracker into a swimming hole, and a spark from that firecracker goes over, I think, 27 feet out of the swimming hole, lands in dry brush, and causes a fire, and he's convicted under Section 451. Really, the legal argument in that case, one of the legal arguments is whether a reasonable person would even be aware that throwing a firecracker into this deep swimming hole could have caused arson. But it's very clear in that case, and I think in ENRI V.V., that the conditions that the court is upholding are ones in which the prosecution simply is not required to prove that. I'll just say one more thing about ENRI V.V., Your Honor, which is the government has a reading of ENRI V.V. that I don't believe is correct, and that is this idea that the two juveniles in that case were warned specifically about the risk of fire. Really, what the opinion is talking about is that the third juvenile told the two defendants that there was a risk of using firecrackers generally. He just said that you could get injured. I think it's a misreading of that case to look at that statement and believe that this indicates that the two individuals were directly told about the significance of the risk that their actions were creating. Your Honor, I would like to say a few things about the federal statute. Again, I don't think this court needs to reach this issue, but if it does, I think it is clear that in 1970, as part of the Organized Crime Control Act, Congress was focused on explosives. This was a reaction to 1968. Congress was worried about bombings on college campuses. That's the focus of the statute. As we note, there's legislative history that indicates that it was focused on intentional conduct. When it used the word malice, it didn't mean to invoke this specialized meaning of that term from common law arson. The addition of the word fire in 1982 is really just done to correct these cases in which the prosecution gets bogged down over the technical definition of what explosives mean. But Congress didn't change that word. It didn't change the word malice. Malice continues to have the meaning that it did just generally under common law, which is that it applies to intentional conduct. Your Honor, since there are no questions about that, I'll just speak briefly about the Convention Against Torture and reserve the rest of my time for rebuttal. I think there are two important things to note on our claim under the convention. The first is that looking at the record, it is very clear that the IJ and the BIA did not consider the evidence. There's a written opinion from the IJ. There's an oral opinion and, of course, the BIA's opinion. Notably, with one exception, which I'll talk about, every fact discussed in those opinions comes from the oral testimony of Mr. Toganon. None of it comes from the documentary evidence. The one exception is this miscite, this reference to a human rights report that's not in the record. We think that's probably a reference to this investigation from Human Rights Watch, but even then it doesn't really make sense. That investigation isn't really an overview of country conditions. It's sort of a specific investigation into isolated cases. This court has developed a test for discovering when an IJ and BIA have considered the evidence, and elements of that test are abundant here. There is misstating the record, as I mentioned. There's a failure to mention a lot of highly probative evidence that was in the record, and there's just overall this addressing of the claim in a non-detailed manner. Under Cole and Kamalfas and Brownfield, those are some of the indicators that this court looks to. I would add, though, on the substance of the claim, this court made very clear just last year in Xochihuahua that the IJ can't simply say you can relocate because you live in a big country. In that case, the IJ said that about the country of Mexico. Here, the IJ basically said the Philippines are large and have a lot of islands. From this court's decision just last year, that's not enough. The IJ has to point to evidence that indicate that an individual can relocate. Wasn't your client's theory, though, that the problem was that his old friends would know about his former drug use? And so there's at least a logical connection that going to live somewhere else would avoid the problem of the old friends reporting him, wouldn't it? Why isn't that logical? I think it's reasonable to consider relocation, Your Honor. But that doesn't speak to the question of whether relocation is actually viable. And I think that's what this court was talking about in Xochihuahua. But in that case, there was the LGBT discrimination everywhere in the country. And here, I understand that the government goes after drug users everywhere. But if the causal link is knowing about the past drug use when he used to live there, it would seem that living somewhere else would help with that. So it seems to avoid the problem more than in our prior precedent. Again, if there was substantial evidence that indicated that relocation was viable, I would agree with you. The problem is that there's no evidence to that effect. And, in fact, what the evidence of the record shows is the places that Mr. Toganon would relocate to are actually places where the threat of being detained is even higher. One note on what you just asked is the government actually—I'm sorry, the IJ did not look at the risk that individuals in Mr. Toganon's neighborhood would know about his prior drug use. That was in the documentary evidence. That was in an affidavit that Mr. Toganon submitted. The only thing the IJ looked at was whether they would know about the basis for his crime in the United States. And so this is an example of where the IJ didn't look at the total aggregate factors that could lead to torture because it ignored some of the evidence. And, Your Honors, I'll reserve the rest of my time unless there are any questions. That's fine. Let's hear from the government. Good morning, Your Honors, and may it please the Court. Nimran Zaidi for the Attorney General. This petition presents two questions. First, whether a petitioner is removable as an aggravated felon based on this California arson offense. And second, whether a petitioner qualifies for deferral or removal under the Convention Against Torture or CAT deferral. Now, starting first with the issue of removability based on the arson offense, the focus here is on mens rea, as the petitioner himself has clarified. And in particular, California arson and the Federal Comparator Statute here, Section 844I, both prohibit the malicious commission of arson. Now, this mens rea in both statutes requires, as the petitioner himself concedes, the general intent to set a fire, but not the specific intent to burn property, burn or damage property. Can I just cut to the chase? So do you concede that 844 does require the defendant to be subjectively aware of the risk that his conduct presents? Is that right? No, Your Honor, that is definitely not right. So you think 844 allows conviction on a negligent standard? Is that your position? Well, Your Honor, to be very clear, it's not a negligent standard necessarily because you still require under California law. And this is an important clarification. No, no, I'm just asking you about 844. We'll get to V.V. in a second and all that. 844, okay, 844, you concede that the defendant must be subjectively aware of whatever the person's doing, whatever risk that's posed with respect to something getting, you know, some building burning down. The defendant has to be subjectively aware that his conduct is creating that risk. Is that a fair statement? No, Your Honor, and that's what I'm disputing. No, it's not a fair statement. Okay. And the petitioner himself has never suggested at any point, and this is a telling point of that argument of his, and I want to be clear about the different arguments, but he has never suggested in that argument that California arson is somehow— No, no, we're asking about the federal. Tell us why the federal counts negligence. I understand, Your Honor. I do understand the questions you're asking, and I'm saying that petitioner never says in making his argument— We don't care what petitioner says. We want to know what you say about the federal law and what your support is for the idea that the federal law includes negligence. Nothing about the federal standard that we are aware of requires, or the federal standard, yeah, the federal standard does not require subjective awareness. How do you know? Point to something that says that. Explain it. We look at even three of, at least three of the five cases that petitioner, or excuse me, that both petitioner and government acknowledge apply here in interpreting 844-I. McFadden from the Third Circuit, Gullitt in the Fourth Circuit, Corona in Monrovia— They all talk about recklessness. Where is there something about negligence? Can you point to it? Your Honor, this is what I'm disputing here. You keep referring to the word negligence because of the second part of what California itself even requires. It still requires an intentional act. So when you say negligence, you're referring, of course, to the second part of that, which is an intentional act, the natural, probable, and direct consequences of which would be a burning of the property or structure. Correct? So that's what I want to be very clear on. I'm not trying to ignore the question. There is nothing in any of those cases that requires, in any of those federal cases, that requires knowledge of that risk. And in three of those cases, again, McFadden, Gullitt, Corona, the specific examples included one, and I believe this is McFadden, where it's a pipe bomb sent to somebody at their property, but it instead exploded somewhere else and damaged the rental property. There was a bomb sent to somebody specifically, or intended to send to somebody specifically, but then blew up, I think, at a mail, at a post office service, somewhere like that. But in both of those cases, then, there was no subjective awareness of the risk that it would go off in that separate location. There was no evidence of that. That was never stated as one of the requirements in the federal law. So I'm looking at McFadden. McFadden plainly acted with willful disregard of the likelihood that damage or injury would result. That's on 146. Yes. So if he had willful disregard of the likelihood that damage or injury would result, that sounds like he subjectively knew that damage or injury would result, that there was at least a chance of that. No, respectfully, Your Honor, that's not right. There's nothing in that case to suggest that he did know. And even language, willful disregard, does not inherently mean that he knew of the specific risk. And if McFadden, I believe you're talking about McFadden, that is the case involving the pipe bomb, I believe. And so in that case, you are talking about an instance where somebody sent a bomb intending to hurt somebody, and then it actually blew up somewhere else and damaged either the postal office property or the rental property. There's nothing there to suggest that he subjectively knew of the risk that where it ended up going off, that that was going to happen. So the willful disregard language does not get you and does not get Petitioner where he needs to get on the federal side of this matching inquiry, which is that the federal law required subjective awareness. And again, tellingly, Petitioner never at any point in his briefing argues that the federal standard or the common law arson, right? Because his argument is really that California arson is even broader than common law arson. Petitioner never suggested federal law or the common law arson does require a subjective awareness. They argue that repeatedly. That's one of their main arguments. And then you respond to it on page 20 of your brief with a footnote about GV. I don't understand where in your brief you ever said that the federal law also includes cases where there's a lack of subjective awareness. Let me be clear. Petitioner never supports that argument at all by suggesting that the federal side of this or common law arson requires subjective awareness. Well, don't they cite they cite treatises and the meaning of what what? I guess I'm blanking on the name of what we're looking at. So there they do cite several treatises about what this mens rea standard is. Your Honor, they cite general treatises about what common law malice generally means. And even that gets it wrong because their contention on the federal statute is this is only common law malice and not common law arson. But it's not. Common law malice includes exactly the same standard as common law arson, which is exactly what those five federal circuit court cases have said. Common law malice from the beginning. And I want to be clear about this because the government's argument is not that. Look, once arson and the fire component of this statute came into play, that's all of a sudden what brought this malicious, wanton malice standard into the equation. It was always and that's what all five of those federal courts have said. It's always been the same mens rea requirement. Petitioner doesn't dispute that. It's always been maliciousness. And from the beginning, that has included both intentional acts and a willful disregard of the likelihood of property damage. But so these treatises, the treatises that talk about malice and actual malice as to common law like Perkins and Boyce. Can you point to anything that suggests that they don't require subjective knowledge? No, Your Honor. We don't. We don't. We don't. Like you said, we don't cite anything in our brief to suggest that. But it's petitioners. It's petitioners burden here when saying that somehow California acts in a way more broadly than even common law. This suggests that that's somehow that standard is somehow broader than common laws. And by showing the common laws, it doesn't include that. And I think you already pointed out, Judge Friedland. This comes from the matter or sorry, the injury case. Right. Petitioner's argument is substantially based on the California Supreme Court decision. The California decision repeatedly says that California's arson definition is derived directly from common law, including its definition of maliciousness. So I think the contention that California's version of arson is somehow broader than federal arson would be news to the. Could you look at the bottom of page 31 of the opening brief and the top of 32? What do you think that's about? Excuse me, I don't have. Can you. So at the bottom of 31 petitioners opening brief says the minors in V.V. could never be convicted under 844. And that goes on to talk about Kelly's quoting Black's Law Dictionary and other federal things, interpreting 844 as not including what we might call a negligent standard. And this is actually so this is a really important point. And this is why just generally saying treatises, what federal law includes and what common arson includes doesn't get to the actual point. If you don't actually construe the statute in its context, that point, I believe we're talking about the same part of the brief refers to the Ninth Circuit jury instructions. And jurors are not instructed to, you know, anything with regard to subjective awareness. That actual treaty is that reference to an intent to do a wrongful act. That very same standard is just is defined in V.V. itself. Right. So this idea that federal law is different and V.V. is broader is refuted by that very description in V.V. That is just the V.V. goes into detail about how you don't need to know subjectively about the risk. The question is whether a reasonable person would know about the risk. That's what V.V. says. Now, can you point to anything in the federal context that says that? That says that you don't know your honor. And again, our contention is petitioner doesn't point to anything to suggest that you do in federal law need to be aware of the risk. And in three of those cases, it seems quite clear that you do not. And that convictions were sustained where the individual did not know the subject. Point to language that says that they did not subjectively know in any of those cases. Well, it's the exact circumstances I just mentioned in all three cases. The petitioner, the individuals in those cases, the defendants were aware of the risk of hurting the person that they intended to hurt. They did not have any intention or even awareness of a risk of hurting the person or blowing up the property that they ended up hurting. And I believe it's gullet, perhaps, although it might be Corona. But the case involving the exposed gas line when a stove is disconnected where the where the individual directly said, I thought that just opening it up and I believe opening a window and releasing it in the air would mitigate any type of risk. So he's not aware of any risk that would result from disconnecting the stove. So in both in all of those circumstances, yes, there's no question. Judge Friedland, the court didn't come down and explicitly say you do not need a subjective awareness here. But our point is that petitioner needs to establish themselves that somehow somewhere in federal law. You do need to show that in none of those cases, those cases very clearly involve circumstances that do not involve a subjective awareness of risk. And again, petitioner never tries to establish that as part of federal law. One point, and I'm happy to jump to cat deferral. I want to clarify one quick point about petitioner's argument on in review and this sort of California arson being exceptionally broad standard. Petitioner repeatedly describes California arson as not requiring subjective awareness of the risk of fire. And that's not right. And that's very clearly not right. What matter what interview says is you don't need a subjective awareness of the risk of fire burning property. Right. It is very clear from California law stated in review itself that you need an intentional act. The initial act of setting the fire was unquestionably intentional. And then the question is whether intensive setting that fire, the direct natural and probable consequences would be the burning property. So sort of that general versus specific intent dichotomy. Now, pushing over to removal really quickly, excuse me, to the cat deferral question very quickly. You know, the question here, of course, on substantial evidence review, we're only looking at whether the record compels the conclusion that petitioner would face the likelihood of torture in the Philippines. I just want to highlight a couple of factors. And then, of course, I'm happy to take any of this panel's questions about particular evidence or petitioner's challenges. The the entire cat claim here stems from the generalized risk of being a drug user in the Philippines. Nothing here is specific to the petitioner. He has never been targeted as a drug user in the past. The claim that individuals or authorities in the Philippines are aware of drug use. And that sort of broad context is important because he, if removed, would not go back to the Philippines as a drug user. He would go back and not presumably as someone who intends to return to drugs. So his entire theory is that he would be targeted and identified either as somebody who previously used drugs in the Philippines or as somebody who would relapse and be targeted then after returning to drug use. And I think it's really important for this court to understand that broader context, because, first, it's very hard to establish the heart, the demanding burden of likely of torture under just generalized evidence. That's one. Can you explain where the where the agency considers the risk that people from his hometown will report him for his past drug use? Where the agency considered that I don't have the site with me, but the immigration judge specifically said that he has a low risk of being identified. And even to the extent he might, he could relocate to avoid that. I don't have a site in front of me. But so the judge does say he could relocate, but then says even if he couldn't relocate and only then talks about things about the future, never talks about the past. So if he can't relocate, there's the risk that the people he used to live with know about his past drug use. And I don't understand where that is considered unless we ignore the even if clause. You're saying you don't know where he considers that even if, assuming no relocation, that he returns to his hometown and in the future that nobody would would target him that way or recognize him that way. I believe I mean, beyond that sentence, I don't know what evidence the petitioner himself is even referring to because he doesn't. He has a declaration that says people know that I used to use drugs with them. So how does the agency consider that? Well, your honor, I think it's this is an important point because I think a lot of petitioners arguments are about, of course, the agency's failure to recognize specific evidence. I don't think that saying and I think pretty firm, firm ground saying that if you just say this thing will happen to me or I know that these people are going to do this without ever identifying a person who knows you in the past or any circumstance in which that might come up is something that's sort of specific enough or material enough for the agency to need to actually address that. Address that claim. I think the agency was well within its right to say the relocation finding one. And then, as you mentioned, Judge Friedland, even if he doesn't relocate, there's no evidence to say there's a low likelihood of him being identified. We think his evidence was fairly speculative. But they never say there's no likelihood of him being identified by his old friends. That's not considered. Well, I don't think that's right. I think I said the relocation would address part of it. And then even if there's no there's a low risk of him being identified by the people in this community. And so, again, I think when you have a speculative risk like this, and I can make just one last point on this issue, this is exactly the type of claim that this court considered in Silva. You were looking at the exact same circumstances of somebody returning to the Philippines claiming future harm based on drug use. And based on the exact two theories here, either you would be targeted based on your past drug use or because you would relapse. And this court said that that was just too speculative to support, which was even a much lower standard there, which was prima facie eligibility for asylum, which is well found in fear of persecution, of course, and not a likelihood of torture. OK, thank you, counsel. Let's hear some rebuttal by the petitioner. Thank you, Your Honor. I'd just like to make a couple points, principally on the common law definition of malice and the arson context. I'll just quote from page 24 of our opening brief. I think we're very clear that an individual commits wanton arson when his act, quote, creates a very high risk of burning the dwelling house of another when the actor knew of that risk and yet did the risk taking act despite that knowledge. That's a quote from the polis article, which is really, I think, canonical on this topic. That's what the Supreme Court cited in Torres. This court decided that a couple of times. But I'll also point out that, you know, on page 21 of the government's brief, they say, and they're quoting Carla Bonilla and go at one of the cases they just talked about. Government says the federal statute sweeps in action that is done in willful disregard of the likelihood that property damage would result. So, you know, contrary to what the government is saying now, I think they've acknowledged that that's the reach of the federal statute. And, you know, to some of the cases that they point out, I think it's just not true on the facts of those cases that there wasn't any evidence that those acts were to the knowledge of the defendant. McFadden was an intentional act. McFadden was someone who mailed a pipe bomb because they wanted to blow up something. You know, they didn't get into wanton arson at all. But I'll just quote from Gullitt. This is the case from the Fourth Circuit, I believe. Quote, there is no question that Gullitt knew that the rental property was located close to the house, the proposed site of the explosion. Thus, Gullitt acted with a willful disregard of the likelihood of fire. The same thing is true in Monroe. That's the case the government was talking about where a gas line was disconnected. The only reason the court upheld the conviction in that case was because there were facts upon which the jury could have found that the defendant knew. You know, the court said this is on page 307. Quote, Monroe admitted that he had worked with natural gas before. In addition, Monroe asked in advance about plugging the gas line, indicating awareness of the dangers associated with leaking gas. So, you know, all of these cases support this idea that, you know, again, we respectfully disagree with this interpretation of the federal statute. But they all support this idea that, you know, to the extent that it incorporates common law malice, you know, it draws a boundary between risks that the defendant is aware of and risks that they're not. And, you know, as you know, as this happened here, you know, I don't think the government can point to a case in which that's not true. The last thing I'd like to say is, you know, I think the government's argument basically comes down to the word malice, which is simply that malice has one meaning at common law. The statute used the word malice. So does California's. You know, that's that's the end of the inquiry. You know, as the great case from the First Circuit says, though, you know, malice is a word of many meanings. You really do have to look at the context to understand what the word means. And I would note that, you know, in Escobar versus Lynch in 2017, this court considered a very similar argument. That was a case about a crime involving moral turpitude. But the government made the same argument that because the California witness tampering statute said the word malice, you know, categorically, it had to be a crime of moral turpitude. This court looked to a California court of appeal decision called Wahidi, in which the California Court of Appeal had interpreted malice to be broader than, you know, simply what the definition can be of malice in some statutes or a common law. And we encourage the court to do the same thing here. You know, I think it's clear from reading and reading any of the cases that cited that there is a commonly accepted interpretation of that case. That interpretation is that it does not require subjective knowledge. And because that is not true federally under any read of federal statute, it has to be the case that California statute is overbroad. I see I have a minute left, so I'll say one more thing about the Convention Against Torture argument, which is simply that, you know, it could be the case that a immigration judge recognizes the argument that you might be, you know, recognized by people in your village who knew you used drug before. The IJ could have heard that and made an adverse credibility determination. They could have heard that and disregarded it. That's fine. The problem is the regulations under the Convention Against Torture make it clear the IJ has to consider it. And in this case, the IJ didn't even consider it. They didn't discuss it, you know, consistent with the review that included none of the documentary evidence. And for that reason, you know, a remand at a minimum would be required under the convention. Okay. Unless there are any other questions, Your Honors, that's all I have. Okay. Thank you very much. We appreciate your arguments this morning. The matter is submitted at this time.
judges: PAEZ, WATFORD, FRIEDLAND